IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SANDY LIEB, also known as,
SANDY LIEB LACEY

   Plaintiff,
v.                    no.

THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA

   Defendant.

## PLAINTIFF'S COMPLAINT

Plaintiff Sandy Lieb, also known as, Sandy Lieb Lacey, files this action against Defendant The Prudential Insurance Company of America in order to overturn a denial of long-term disability insurance benefits secured through a group insurance policy issued to Lieb's former employer, and in support thereof avers as follows:

### Jurisdiction and Venue

1. The jurisdiction of this Court is based upon 28 U. S. C. §1331, in that this Court has original jurisdiction of this matter which is based upon a law of the United States of America, the Employee Retirement Income Security Program ("ERISA"), 29 U. S. C. §1001, et. seq. This Court also has a specific grant of jurisdiction over this matter as provided by 29 U. S. C. §1132(e).

2. Venue is appropriate in this Court pursuant to 28 U. S. C. §1392(b) in that the Defendant has ongoing business operations in this District, Plaintiff was employed and resides in this District and a substantial part of the events giving rise to the claim occurred in this District.

3. Over the course of Plaintiff's lifetime, the amount in controversy exceeds $150,000.00, exclusive of interest and costs.

1

## Parties

4. Plaintiff Sandy Lieb, also known as, Sandy Lieb Lacey ("Lieb"), is an individual who resides at 1319 Gwyndale Way, Lansdale, PA 19446.

5. Defendant The Prudential Insurance Company of America ("Prudential") is an insurance company that provides long term disability insurance benefits to amongst others, employees of Severn Trent Services, Inc. Prudential maintains a principal place of business at 751 Broad Street, Newark, NJ 07102, and its registered agent for service or process in the Commonwealth of Pennsylvania is CT Corporation System, which is located at 116 Pine Street, Suite 320, Harrisburg, PA 17101.

## Factual Background

### A. Plaintiff's Employment with Severn Trent Services

6. Plaintiff Lieb, who is 52 years of age, commenced employment with Severn Trent Services, Inc. ("Severn Trent) on November 2, 1999, and she was last employed as a Senior Human Resources Representative at an annual salary of $73,854.00.

7. Lieb's duties included employee relations, management relation issues and termination procedures for a regional field of more than 750 employees and managing two HR representatives. Approximately 70 % of Lieb's job involved travel to Severn Trent worksites and in order to perform her job duties, substantial automobile travel, typing and handwritten work was required.

### B. Plaintiff's Short-Term Disability Claim

8. As of July 2013, Plaintiff Lieb was suffering from a major depressive disorder, cardiac problem and chronic pain and chronic fatigue.

9. Lieb's treating physicians have diagnosed her as suffering from a left ulnar nerve lesion resulting in chronic tissue and nerve damage impacting her left and right wrist, rheumatoid arthritis and fibromyalgia.

10. Lieb's last physical day of work at Severn Trent was July 2, 2013.

11. As of July 5, 2013, Lieb was unable to work and she was taken out of work by her treating physician.

12. Defendant Prudential provides disability insurance benefits to Severn Trent employees.

13. At Prudential's request, Lieb had her treating physician complete a Group Disability Insurance Attending Physician Health Statement, indicating that Lieb was placed on disability due to a major depressive disorder, anxiety, cardiac problem, and related issues, which resulted in poor concentration, prescription of several medications, and therapy.

14. Lieb submitted records from medical providers including:

   a. Mathew Collins, DO, Lieb's treating cardiologist, who indicated Lieb has a cardiovascular history that includes palpitations almost on a daily basis and Paroxysmal supraventricular tachycardia (PSVT), episodes of rapid heart rate that start in a part of the heart above the ventricles.

   b. T. Robert Takei, MD, Lieb's orthopedist, who indicated Lieb should not work and that she was suffering from wrists and elbow pain and she has a history of orthopedic problems including chronic bilateral elbow, wrist pain, right tennis elbow, and failed reconstruction of a right wrist ligament, and ulnar sided wrist pain and she failed to respond to many years of treatment; and

  c.  Josephine Probe-So, MD, a psychiatrist, who indicated that Lieb suffers from a major depressive disorder, cardiac problem and chronic pain and she is unable to work.

  15. Lieb began receiving short-term disability insurance benefits through approximately October 2, 2013.

  16. On September 19, 2013, Prudential advised Lieb that it hired Allsup, a specialized claims administration company, that helps people throughout the United States obtain Social Security Disability benefits to assist Lieb. At the time, Allsup requested that Lieb provide an Authorization for Release of Information form, which Lieb executed on September 19, 2013.

  C. **<u>Prudential's Long-Term Disability Plan</u>**

  17. As part of her employment benefits package with Severn Trent Lieb received long-term disability insurance benefits from Prudential.

  18. As of July 1, 2014, Prudential provided long-term disability insurance benefits to employees of Severn Trent under group contact number G-51487-PA.

  19. The long-term disability insurance benefits coverage provided by Prudential is outlined in a Booklet Certificate (*See* Exhibit "A") (hereinafter, "the Prudential Plan") prepared by Prudential in which Prudential advises participants, "This certificate is a written document prepared by Prudential which tells you the coverage to which you may be entitled; to whom Prudential will make a payment; and the limitations, exclusions and requirements that apply within a plan." (Prudential Plan, p. 5)

  20. The Prudential Plan provides for a 90-day elimination period. Thereafter, eligible participants are entitled to a monthly benefit of 60% of monthly earnings up to a maximum monthly benefit of $10,000.00. (Prudential Plan, p. 1).

21. A participant who is first eligible for benefits under the Prudential Plan, who is under age 61, is entitled to benefits until their normal retirement age retirement age under the Social Security Act where retirement age depends on the year of birth. (Prudential Plan p. 2).

22. For an eligible participant born in the year 1964, the Prudential Plan provides disability retirement benefits are available until age 67.

23. The Prudential Plan defines disability as follows:

> You are disabled when Prudential determines that:
> • you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury, and
> • you are under the regular care of a doctor, and
> • you have a 20% or more loss in your monthly earnings due to that sickness or injury
>
> After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury:
> • you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience; and
> • you are under the regular care of a doctor
>
> Prudential Plan, p. 10

24. The Prudential Plan provides Prudential will assess your ability to work and the extent to which you are able to work by considering the facts and opinions from:

> • your doctors; and
> • doctors, other medical practitioners or vocational experts of our choice. When we may require you to be examined by doctors, other medical practitioners or vocational experts of our choice, Prudential will pay for these examinations. We can require examinations as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Prudential Representative. Refusal to be examined or interviewed may result in denial or termination of your claim.
>
> Prudential Plan, p. 10

25. The Prudential Plan defines "Sickness" as "any disorder of your body or mind, but not an injury . . ." Disability must begin while you are covered under the plan." Prudential Plan, p. 11

26. The Prudential Plan defines "Regular care" as

> - you personally visit a doctor as frequently as is medically required, according to generally accepted medical standards, to effectively manage and treat your disabling condition(s); and
> - you are receiving the most appropriate treatment and care, which conforms with generally accepted medical standards, for your disabling condition(s) by a doctor whose specialty or experience is the most appropriate for your disabling condition(s), according to generally accepted medical standards.

Prudential Plan, p. 11

27. The Prudential Plan defines "Doctor" as a person who is performing tasks that are within the limits of his or her medical license; and

> - is licensed to practice medicine and prescribe and administer drugs or to perform surgery;
> or
> - has a doctoral degree in Psychology (PhD. or Psy.D.) whose primary practice is treating patients; or
> - is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

Prudential Plan, p. 11

28. The Prudential Plan provides "Gainful occupation" means an occupation, including self-employment, that is or can be expected to provide you with an income within 12 months of your return to work, that exceeds:

> - 60% of your indexed monthly earnings, if you are working; or
> - 60% of your monthly earnings, if you are not working.

Prudential Plan, p. 11, 35

29. The Prudential Plan provides that Prudential will deduct from your gross disability payment the following deductible sources of income...

> 3. The gross amount that you ... are entitled to receive as loss of time disability payments because of your disability under:
> (a) the United States Social Security Act;

Prudential Plan, p. 14

30. The Prudential Plan provides

> We will stop sending you payments and your claim will end on the earliest of the following:
>
> 1. During the first 24 months of payments, when you are able to work in your regular occupation on a part-time basis but you choose not to; after 24 months of payments, when you are able to work in any gainful occupation on a part-time basis but you choose not to.
> 2. The end of the maximum period of payment.
> 3. The date you are no longer disabled under the terms of the plan.

Prudential Plan, p. 19

31. The Prudential Plan provides that "Chronic illness or disability" means one in which there is:

> • a loss of the ability to perform, without substantial assistance, at least two activities of daily living for a period of at least 30 consecutive days; or
> • a severe cognitive impairment, which requires substantial supervision to protect the family

Prudential Plan, p. 27, 32

32. Directly after the 37-page Booklet Certificate, on a separate page, the following language appears by itself, "The Summary Plan Description is not part of the Group Insurance Certificate. It has been provided by your Employer and included in your Booklet-Certificate upon the Employer's request."

7

33. The Prudential Plan has the same terms as the Prudential Booklet Certificates at issue in reported decisions in this District in *Herbert v. Prudential Ins. Co. of Am.*, no. 14-cv-2599, 2014 WL 4186553, at *2 (E.D. Pa. Aug. 22, 2014); *White v. Prudential Ins. Co. of Am.*, 908 F.Supp.2d 618, 626 (E.D. Pa. 2012); *Orantes v. CNH Grp. Ins. Plan*, no. 10-cv-7215, 2011 WL 1376069 (E.D. Pa. Apr. 12, 2011); *Farina v. Temple Univ. Health Sys. Long Term Disability Plan*, no. 8-cv-2473, 2009 WL 1172705 (E.D. Pa. Apr. 27, 2009); and *Elms v. Prudential Ins. Co. of Am.*, 6-CV-5127, 2008 WL 4444269 (E.D. Pa. Oct. 2, 2008) ("the Prior Prudential Plan Policy decisions").

34. In each of the Prior Prudential Plan Policy decisions the District Court found that determinations regarding eligibility for long-term disability benefits under the Prudential Plan are subject to de novo review as there are no specific terms in the Prudential Plan that provide Prudential broad discretion or authority to determine eligibility for benefits or to construe the terms of the Plan.

35. Determinations regarding eligibility for long-term disability benefits under the Prudential Plan at issue with respect to Lieb's claim are subject to de novo review by this Court as there are no specific terms in the Prudential Plan that give Prudential broad discretion or authority to determine eligibility for benefits or to construe the terms of the Plan.

36. The Prudential Plan is not subject to an arbitrary and capricious standard of review / deference.

37. There is a conflict of interest under the Prudential Plan in that Prudential determines both eligibility for benefits and pays benefits exclusively out of its own funds.

### D. Leib's Claim for Long-Term Disability Insurance Benefits

38. Following the expiration of short-term disability benefits, Lieb submitted a claim for long-term disability benefits under the Prudential Plan.

39. Prudential approved Lieb's claim for long-term disability benefits effective October 3, 2013. As a consequence, Lieb began to receive scheduled monthly disability checks in the monthly amount of $3,585.16.

40. Six months later, on March 12, 2014, Prudential notified Lieb that it had reviewed her long-term disability claim to determine her eligibility for the continuation of Group Life Insurance issued by Severn Trent. Prudential advised Lieb that her conditions met the definition of disability, and premium payments by Lieb to continue the Group Life Insurance coverage would not be required. At that time Prudential indicated that in order to qualify for the waiver of premium it had determined that Lieb had met the "Total Disability" standard, which requires: (1) You are not working at any job for wage or profit; and (2) Due to sickness, injury or both you are not able to perform for wage or profit, the material and substantial duties of any job for which you are reasonably fitted by your education, training or experience.

41. As a consequence of the determination that Lieb met the "Total Disability" standard Prudential indicated that the Group Life Insurance coverage would continue until April 2, 2029 when Lieb reaches age 65, and the eligible amount was $296,000.00.

42. On March 25, 2015, Prudential advised Lieb that it was reviewing her claim for long-term disability benefits to determine whether she remained eligible due to a change in definition of disability that applies after first 24 months.

9

43. On April 1, 2015, Prudential requested that Lieb complete Medical Authorization forms and a Reimbursement Agreement, requiring Lieb to pursue eligibility for social security benefits, up to and including appeal to an administrative law judge, and that if she is awarded social security benefits retroactively, Lieb would need to reimburse Prudential any overpaid monies due; Lieb complied.

44. On April 5, 2015, Lieb completed an Education and Employment History Form and Activities of Daily Living Questionnaire, noting that she cannot type, or handwrite, cannot sit or stand for substantial periods of time, she cannot focus or concentrate to due chronic fatigue, she sleeps during parts of day to chronic fatigue, her driving is limited to 10 miles, and her condition can cause her to fall asleep in the car and she was in chronic pain

45. In May 2015, Lieb submitted an Activities of Daily Living Questionnaire and an Educated Training and Experience Questionnaire, indicating that she has chronic tissue and nerve damage, left and right wrist and elbow rheumatoid arthritis and fibromyalgia; she's taking medication along with Oxycontin and Percocet, which make it difficult to concentrate and focus, and she suffers from chronic fatigue. Lieb indicated that she can't type or handwrite; can't sit or stand for long periods of time due to these conditions; and she can't concentrate due to the conditions of the medications she is required to take; and she suffers from double vision and heart issues. Lieb also indicates that she has pain in her body which leads to restless sleep; indicates that her short-term and long-term memories have been impacted; she needs assistance with long-distance travel; in terms of daily activities she cannot mop or vacuum, or engage in housekeeping, gardening or household repairs. At the same time provided her résumé.

46. On June 18, 2015, at Prudential's request, C M. Franklin, M.D., Lieb's treating rheumatologist, the Chief of Rheumatology of Abington Jefferson Health System, who is

licensed to practice medicine in the Commonwealth of Pennsylvania, provided a Group Disability Capacity Questionnaire that indicates that Lieb is not capable of full-time work or part-time work; it is unknown when she will be able to return to full-time work, but that it is no time within the next 12 months; that Lieb has no capacity in terms of climbing ladders, balancing/heights, stooping, knelling/crawling, right handling/fingering, left handling/fingering, lifting/carrying up to 20 pounds, lifting/carrying up to 50 pounds. Dr. Franklin indicated that his opinion is based on both objective findings and self- reported severity of symptoms.

47.     On August 14, 2015, Prudential forwarded correspondence to Dr. Franklin, seeking confirmation that Lieb is limited to lifting up to 10 pounds occasionally; she can sit for one hour at a time, with the ability to change positions, for a total of 6 hours in a day; she can stand occasionally; she can walk occasionally; she has chronic medical and physical conditions; she is limited on a repeated basis in an 8-hour day to fingertip handling, and grasping up to 20 minutes with a 5-minute break.  The letter states that Dr. Franklin indicated that Lieb does not have full-time or part-time work capacity and she could not stand or walk up to a half-hour per day or a half-hour at a time, and if his opinion differs he should list specific limitations, medically necessary restrictions and how participation work activities would be detrimental. The document was signed by a Nancy Eisenberger, CRNP, who is associated with Dr. Franklin's practice.

48.     On November 3, 2015, Prudential notified Lieb that it terminated her claim for long-term disability benefits as of October 31, 2015. Prudential acknowledged Lieb suffers from rheumatoid arthritis, fibromyalgia, depression and ulnar nerve decompression left wrist, and that she has chronic pain syndrome and whole body joint and muscle pain from rheumatoid arthritis and tendinosis. However, Prudential concluded that Lieb was capable of performing a sedentary

occupation and the information in her file does not support impairment that would prevent Lieb from performing material and substantial duties of your regular occupation; and Prudential concluded that Lieb did meet the definition of disability.

49. On November 16, 2015, Dr. Franklin, Lieb's treating rheumatologist, prepared another report advising Prudential that Lieb was under his care for active rheumatoid arthritis, that remains active and disabling and indicated that the evaluation summary dated August 14, 2015 was erroneously signed by a nurse practitioner in his office and not seen or reviewed by him personally and he does not agree with the conclusion that Lieb can work given her disease activity.

50. On November 17, 2015, Lieb notified Prudential that she was appealing the termination of her long-term disability claim. Lieb also indicated there was no feasible way for her to hand key on an ongoing basis even if broken down into 20-minute intervals, the act of writing caused severe pain, and indicated that over a period of 15 years she spent the majority of her day talking to employees, taking copious notes and transferring notes and write-ups into findings, that the information does not lend itself to dictation; hence, the need for handwritten and typewritten notes as employees cannot be recorded due to their confidential nature, and she asked that the appeal termination of benefits be overturned.

51. On December 14, 2015, Lieb advised Prudential that she is having additional issues with her left hand and will be seeing Dr. Takei, an orthopedic physician; indicating she spends her day with her wrists propped up on pillows and taking pain medication; that the description of duties provided is incorrect.

52. On December 31, 2015, Prudential stated that it could not assess Lieb's status because it did not have an updated report from Lieb's treating orthopedist Dr. Takei.

53. Shortly thereafter, Prudential received records and notes from Dr. Takei confirming Lieb's orthopedic history including the diagnosis of a lesion of left ulnar nerve neuropathy, a chronic history of wrist issues and the fact that surgery and conservative post-surgery treatment failed.

54. Prudential provided Lieb's records to William M. Strasberg MD, an orthopedic surgeon, who is not licensed to practice medicine in the Commonwealth of Pennsylvania, who prepared a report dated February 3, 2016. Dr. Strasburg stated that Lieb's medical condition does not prevent her from performing work in a sedentary capacity position and stated that the restrictions imposed by Lieb's treating physicians were overly restrictive and he stated that the claim that Lieb could not type or write on an ongoing basis due to chronic pain was not supported by physical exam or testing data.

55. Dr. Strasberg, who was paid $3,290 for his report, did not perform a physical examination of Lieb, did not speak to Lieb and did not consult with any of her treating physicians.

56. On February 3, 2016, Prudential had a medical file review performed by Dr. Julia Ash, MD, a rheumatologist, who is not licensed to practice medicine in the Commonwealth of Pennsylvania, who opined that although Lieb may have a rheumatoid arthritis diagnosis, Dr. Franklin's medical record does not provide documentation to support very active and functioning disabling rheumatoid arthritis, and the file shows several important inconsistencies and noncompliance with treatment recommendations and no significant testing results. While Dr. Ash supported limited restrictions, as to the assertion that Lieb cannot write or type, Dr. Ash stated, "symptom augmentation is strongly suspected."

57. On February 3, 2016, Dr. Ash spoke to Dr. Franklin, Lieb's treating rheumatologist, then faxed a letter to Dr. Franklin purporting to confirm the conversation in which Dr. Ash claimed that Dr. Franklin questioned the diagnosis of rheumatoid arthritis in light of the absence of joint swelling.

58. On February 3, 2016, Dr. Franklin replied to the fax and informed Prudential that Dr. Ash's purported summary of the conversation was not accurate at all, that Lieb suffered symmetric joint pain and swelling which constituted rheumatoid arthritis, that Dr. Ash was not in any position to make a diagnosis or question the diagnosis without a full exam and history, and that if there is a question regarding a formal functional assessment; Dr. Ash refused to permit such as assessment. In referencing Dr. Ash, Dr. Franklin specifically stated, "it appears her main goal was to avoid the active issues in the motivated patient's health."

59. Dr. Ash, who was paid $3,360.00 for the file review, never performed a physical examination of Lieb and never spoke to Lieb.

60. On February 23, 2016, Dr. Ash wrote a "Medical Review Addendum" in which she states that that Dr. Franklin's written feedback does not alter her opinion but she conceded, ""I agree that Dr. Franklin, is examining physician, is in the best position to establish or disapprove diagnosis of rheumatoid arthritis." Dr. Ash was paid $420 for the Addendum.

61. On February 23, 2016, Prudential advised Lieb it was requesting an additional 90 days to review the appeal file, however, the next day, February 24, 2016, Prudential notified Lieb that it had completed review of "our first request for reconsideration of our decision to terminate and have upheld the decision to terminate your claim."

62. In denying Lieb's appeal and continuing to claim that Lieb was not disabled, Prudential chose to follow the reviews of the paid physician-reviewers who never treated Lieb,

14

never conducted a physical examination of Lieb and never spoke to Lieb. Instead, Prudential summarily chose to follow two paid physician reviewers, claiming that clinical findings contained in the file do not support that diagnosis.

63. Prudential also claimed that there were four jobs that Lieb could perform within a 50-mile radius of her home: Manager, Employment Agency; Payroll Supervisor; Recruiter Insurance Agent; Coordinator, Skill Training, based on a vocational analysis report.

64. Even though Lieb requested all records upon which Prudential based its decision, Prudential never provide Lieb with the vocational analysis report.

65. On April 5, 2016, Lieb appealed Prudential's determination indicating that she is still having pain; that she cannot use her hands and elbows; and that the four occupations listed would require hours of keying on a computer and that a long commute was not feasible given her travel limitations.

66. On August 1, 2016, Lieb advised Prudential Dr. Franklin has once again prescribed Prednisone; she also included a disability form completed by Dr. Franklin; and stated that she doesn't treat with Dr. Takei because the only treatment available is surgery; and reiterated that all of the doctors agree that she is not able to work.

67. On September 6, 2016, Prudential advised Lieb; it had completed review of second request for reconsideration; the decision was appropriate and that if she disagrees she could file a lawsuit under ERISA.

### E. Lieb's Award of Social Security Disability Benefits

68. On May 12, 2014, for the second-time Prudential advised Lieb that based on its file review she might be eligible for Social Security Disability Income ("SSDI") benefits, and

that Prudential was offering free SSDI representation services through the Social Security experts at Allsup, who would pursue an SSDI award on her behalf.

69. On June 16, 2014, Lieb filed an application for SSDI benefits with the Social Security Administration ("SSA").

70. In order to qualify for SSDI benefits a person must meet the SSA's definition of total disability which is based on the inability to work and requires that a person cannot do work that the person did before and cannot adjust to other work because of the person's medical condition(s); and the disability has lasted or is expected to last for at least one year.

71. On October 11, 2016, the SSA issued a Notice of Decision-Fully Favorable finding that Lieb was disabled under the Social Security definition of total disability as of September 1, 2014, and that her impairment or combination of impairments is so severe it meets the requirements of one of the impairments listed in the Listing of Impairments found in Social Security law.

72. On November 14, 2016, the SSA issued a Notice of Award, awarding Lieb $34,929 in back benefits and $1,949 in monthly benefits beginning in December 2016. Based on the Notice of Award, the first month for which Lieb was entitled to SSDI benefits was February 2015.

73. On December 22, 2016, Lieb notified Prudential that she was awarded SSDI benefits, enclosed supplemental medical records from Dr. Franklin, her treating rheumatologist, which were relied upon in part in reaching the SSA Notice of decision, and requested that her claim be reopened based upon the new information provided, and that the SSA Notice of Award be included in the administrative record.

74. On December 28, 2016, Prudential advised Lieb that regardless of the SSA Notice of Decision and further medical documents provided, her appeal rights were exhausted, the decision could not be further appealed and the Award was being reviewed to determine if there was an overpayment of disability benefits.

75. On December 29, 2016, Prudential advised Lieb that as a result of the SSA Notice of Decision, and Prudential's prior long-term disability payments, Lieb was overpaid in the amount of $14,971.23 (the difference between the policy benefits and SSDI payments received), and Prudential demanded reimbursement; Lieb provided a reimbursement check on January 10, 2017.[1]

76. Throughout the course of its dealings with Lieb, Prudential has unfairly benefited by deciding Lieb's disability claim according to biased and self-serving principals for its own financial benefit, to the detriment of Lieb. In so doing, Prudential's actions have been arbitrary and capricious and in bad faith.

77. Ultimately, Prudential's conduct has resulted in Lieb being wrongfully denied long-term disability insurance benefits for medical conditions, which constitute a qualified disability under the Prudential Plan, conditions that have not substantially varied since the onset.

## COUNT I

**Sandy Lieb, also known as, Sandy Lieb Lacey v. The Prudential Insurance Company of America**

**ACTION PURSUANT TO 29 U. S. C. SECTION 1132 (a)(1)(B)**

78. Paragraphs 1 to 77 above are incorporated herein as if set forth in full.

---

[1] Under the Prudential Policy Lieb is entitled to monthly benefits of $3,585.16. The Prudential Policy provides that for each month Lieb is paid benefits by Prudential the benefits are reduced by the SSDI benefits received for that month.

79. Lieb was a participant in the Prudential Plan that provides long-term disability benefits.

80. At all times from October 31, 2013 to present Lieb has been totally disabled within the meaning of the Prudential Plan.

81. Lieb has been denied continuing long-term disability benefits under the Prudential Plan.

82. Lieb has exhausted all administrative remedies udner the Plan.

83. Prudential has refused to reopen Lieb's appeal and the administrative record from which it based its decision based on the new information provided, including the SSA Notice of Determination.

84. Prudential's termination of Lieb's claim for long-term disability benefits was made in an arbitrary and capricious fashion.

85. Lieb has been unfairly prejudiced, delayed and wrongfully denied the right to recover long-term disability benefits under the terms of the Prudential Plan which is subject to jurisdiction under ERISA.

86. By denying Lieb long-term disability benefits Prudential has violated 29 U. S. C. §1132 (a)(1)(B).

WHEREFORE, Plaintiff Sandy Lieb, also known as, Sandy Lieb Lacey, respectfully quests that this Honorable Court enter judgment in her favor and against Defendant The Prudential Insurance Company of America and that this Court (1) enter an Order clarifying

Plaintiff's rights to all past, present and future long-term disability benefits due to her; and (2) awarding Plaintiff (a) all past, present and future long-term disability benefits due, (b) prejudgment interest, (c) reasonable attorneys' fees costs and costs, and (d) all other legal and equitable relief that the Court deems appropriate.

                                                                                             Andrew S. Abramson, Esq.
                                                                                              Abramson Employment Law, LLC
                                                                                              790 Penllyn Blue Bell Pike
                                                                                              Suite 205
                                                                                              Blue Bell, PA 19422
                                                                                              telephone: 267-470-4742
                                                                                              email: asa@aemploylaw.com

Dated: February 10, 2017                          attorney for Plaintiff Sandy Lieb,
                                                                                              also, known as, Sandy Lieb Lacey